NUMBER 13-00-394-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 
DON ALAN NICHOLSON AND PATRICIA NICHOLSON, Appellants,


v.


WASHINGTON MUTUAL, F. A. F/K/A AMERICAN SAVINGS, F. A. , Appellee.

 
On appeal from the 101st District Court

of Dallas County, Texas.

 


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Castillo

Opinion by Chief Justice Valdez


Appellants, Don Alan Nicholson and Patricia Nicholson ("Nicholsons"), originally brought a wrongful foreclosure suit
against Appellee, Washington Mutual, F.A., formerly known as American Savings Bank, F.A. ("American"). Both the
Nicholsons and American moved for summary judgment. The trial court denied the Nicholsons' motion but granted
American's motion. The Nicholsons now appeal from the trial court's grant of summary judgment in favor of American.
The trial court found American to be the holder of the Nicholsons' loan note ("Nicholson note") and deed of trust, allowing
American to lawfully foreclose on the Nicholsons' property. The issues on appeal are: 1) whether American was, indeed,
the owner and holder of the Nicholson note and deed of trust at the time of foreclosure and, if not, whether American had
the power to foreclose on the Nicholson property in any other capacity; and 2) whether the Nicholsons are precluded by the
doctrine of res judicata from raising any further issue regarding any damages sustained from their alleged wrongful
eviction within their wrongful foreclosure action. We find that the trial court erred in granting summary judgment, and
therefore, we reverse the trial court's judgment.

Background

According to facts stipulated to by both parties, the Nicholsons assumed responsibility for a loan note on February 27,
1985, in order to purchase real estate in Plano, Texas. American became the owner and holder of the Nicholson note on
December 20, 1988. 

On March 24, 1995, American and Lehman Brothers ("Lehman") entered into a Loan Sale Agreement, under which
Lehman purchased approximately 3800 loans from American. One of the loans sold to Lehman was the Nicholson note.
Lehman and Bankers Trust Company of California ("Bankers") subsequently entered into a custodial agreement, whereby
Bankers was to act as custodian for a number of loans owned by Lehman. The Nicholson note and deed of trust were
endorsed in blank by American and delivered to the custodian, Bankers. Bankers remained in custody of the Nicholson
note and the deed of trust during all times relevant to this case. On May 1, 1995, American and Lehman executed a "flow
servicing agreement," which stated that American was to act as servicer for Lehman. Throughout this time period, the
Nicholsons paid timely on the note balance; however, in August of 1995, the Nicholsons defaulted on the loan. 

In order to initiate acceleration proceedings on the Nicholson mortgage, American appointed a substitute trustee, Jack
Hagar, on March 12, 1996. After sending timely notice to the Nicholsons, American's substitute trustee followed through
with the foreclosure sale on the Plano property on May 7, 1996. American purchased the real estate at the foreclosure sale,
but later conveyed the property to UMLIC-10 Corporation. Thereafter, the Nicholsons brought this wrongful foreclosure
suit.

Standard of Review

In a traditional summary judgment proceeding, the movant bears the burden of demonstrating that there is no genuine issue
of material fact and that judgment should be granted as a matter of law. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548 (Tex. 1985). All evidence favorable to the nonmovant must be taken as true, and any doubts must be
resolved in favor of the nonmovant. Id. at 548-49.

American moved for summary judgment on two grounds: 1) American, as a designee of Lehman, was a constructive owner
and holder of the Nicholson note and deed of trust and therefore had the right to foreclose; and 2) through the execution of
the flow servicing agreement, Lehman named American as its servicer, thus authorizing American to conduct the
foreclosure sale of the Nicholson property. The trial court issued a general order granting American's motion. If a
summary judgment order does not specify the ground or grounds relied on for the ruling, the summary judgment will be
affirmed on appeal if any of the theories advanced are meritorious. State Farm Fire and Casualty Co. v. S.S., 858 S.W.2d
374, 380 (Tex. 1993). We will first address American's status as owner and holder of the Nicholson note and deed of trust.

Analysis

Was American the Owner and Holder of the Nicholson Note?

A holder is defined as a person who is in possession of an instrument payable to him or to bearer. Tex. Bus. & Com. Code
Ann. § 1.201(20) (Vernon Supp. 2001). An instrument which is indorsed in blank is payable to the bearer. Tex. Bus. &
Com. Code Ann. § 3.204 (Vernon Supp. 2001). An indorsement in blank is an indorsement which does not identify the
person to whom the instrument is payable. Id. An instrument which is payable to bearer is negotiated by transfer of
possession. Tex. Bus.& Com. Code Ann. § 3.201 (Vernon Supp. 2001); Behring Int'l,Inc. v. Greater Houston Bank, 662
S.W. 2d 642, 650 (Tex. App.-Houston 1983, writ dism'd w.o.j.); Texas Sporting Goods Co. v. Texas Gulf Sulphur Co., 81
S.W. 2d 805, 807 (Tex. App.-Galveston, 1935, no writ).

Possession is the key element to being a holder of an instrument which is indorsed in blank. Tex. Bus. & Com. Code Ann.
§ 1.201(20) (Vernon Supp. 2001). Before one can be the holder of an instrument which is payable to bearer, he must have
possession of the instrument. In the suit at hand, American claims it had possession of the Nicholson note and deed of trust
during all times relevant to this suit. Several Texas courts have held that possession of a note or instrument can be either
physical or constructive. See, e.g., Boyd v. Diversified Financial Syaytems, 1 S.W.3d 888, 891 (Tex. App.-Dallas 1999, no
pet); Busbice v. Hunt, 430 S.W.2d 291, 292 (Tex. Civ. App.-Tyler 1968, writ ref'd n.r.e.). Physical possession of legal
documents by one's agent constitutes constructive possession. Lazidis v. Goidl, 564 S.W.2d 453, 455 (Tex. Civ.
App.-Dallas 1978, no writ). Constructive possession also results when an instrument is delivered to an agent of the payee. 
Miller-Rogaska, Inc. v. Bank One, N.A., 931 S.W. 2d 655, 660 (Tex. App.-Dallas, 1996, no writ). When American sold
the Nicholson note to Lehman, both the note and deed of trust were indorsed in blank and the documents were delivered to
Bankers. According to the custodial agreement ("agreement") which existed between Lehman and Bankers, Bankers was to
"take possession of the Mortgages and Mortgage Notes. . .as the custodian of the Purchaser." "Purchaser" is defined in the
agreement as Lehman Brothers, or its successor in interest or assigns. The agreement makes clear that Bankers was to
serve as the custodian/agent of Lehman. As noted above, "possession may be in the hands of an authorized agent of the
owner and the owner may still aver that he is the owner and holder of the note." Lazidis v. Goidl, 564 S.W.2d at 456.
Bankers, serving as the exclusive agent of Lehman, retained physical possession of the Nicholson note and deed of trust,
while Lehman had constructive possession of the same. Upon delivery of the indorsed note and deed of trust, American
transferred its rights as owner and holder to Lehman, the sole "Purchaser." 

American, however, claims that it was a designee of Lehman, and as such, maintained possession of the note and deed of
trust. The agreement contains a section which states, "Custodian shall hold the Custodial Files for the exclusive use and
benefit of the Purchaser, its designee or assignee. . . ." American argues that it is a designee of Lehman, and therefore was
entitled to retain Bankers as its agent. If American's argument is correct, then Bankers is an agent for American, and
American would have constructive possession of the Nicholson note and deed of trust. However, we find no evidence to
support American's contention. The agreement does not name American as a designee of Lehman, therefore, there is no
evidence to establish that American was Lehman's designee. Accordingly, we find that the summary judgment evidence
does not establish that American was in possession of the Nicholson note and deed of trust, nor does the evidence establish
that American was a designee of the holder. 

Did American Have the Power to Foreclose in Any Other Capacity?

In its motion for summary judgment, American also argues that it was authorized by Lehman, through the execution of the
flow servicing agreement, to conduct the foreclosure on the Nicholsons' property. The question here is whether Lehman
could authorize another party to appoint a substitute trustee and, ultimately, to foreclose on the Nicholson real estate. A
person's authority to conduct a foreclosure under a deed of trust is governed by the language found in the deed of trust.
Slaughter v. Qualls, 162 S.W.2d 671, 675 (Tex. 1942). Additionally, the property code provides that the ability to conduct
a foreclosure sale of real property is derived from "a power of sale conferred by a deed of trust. . . ." Tex. Prop. Code Ann.
§ 51.002(a) (Vernon 1995). The Court in Slaughter held that a "trustee has no power to sell the debtor's property, except
such as may be found in the deed of trust; and the powers therein must be strictly followed." Slaughter, 162 S.W. 2d at
675; See also Houston First Am. Sav. v. Musick, 650 S.W. 2d 764, 768 (Tex. 1983); Univ. Sav. Ass'n v. Springwoods
Shopping Ctr. 644 S.W. 2d 705, 706 (Tex. 1982). Accordingly, in the present case, the trustee and the owner of the
Nicholson note and deed of trust, Lehman, were bound by the language of the deed of trust.

The deed of trust to the Nicholsons' property specifically gives the lender, or trustee, the right to appoint a substitute trustee
and to move forward with foreclosure proceedings:

18. . . .Lender prior to acceleration shall mail notice to borrower. . . . If Lender invokes the power of sale, Lender or
Trustee shall give notice of the time, place and terms of sale by posting notice at least 21 days prior to the day of sale. . . .

* * * * *

23. Substitute trustee. Lender at Lender's option, with or without cause, may from time to time remove Trustee and appoint
a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust
is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power, and duties
conferred upon the Trustee herein and by applicable law.

American claims that it was authorized by the flow servicing agreement to conduct such actions as foreclosure and debt
collection. However, under the deed of trust, as referenced above, only the lender was authorized to perform these tasks,
and there is no authority for the lender to delegate these tasks to a third person. The terms and conditions of a deed of trust
must be strictly adhered to when conducting a sale of real estate. Houston First Am. Sav., 650 S.W.2d at 768. As such,
only the lender under the deed of trust was allowed to appoint a substitute trustee and to move forward with foreclosure
proceedings. 

Alternatively, American claims that it was the "lender" under the deed of trust, arguing that the deed of trust was assigned
by the original lender to American, but was never assigned by American to Lehman. We find American's argument without
merit. The mortgage of a property is an incident of the debt; and as long as the debt exists, the security will follow the debt.
J.W.D., Inc. v. Federal Ins. Co., 806 S.W.2d 327, 329-30 (Tex. App.-Austin 1991, no writ); Lawson v. Gibbs, 591 S.W.2d
292, 294 (Tex. Civ. App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.). Accordingly, while the deed of trust may never have
been assigned to Lehman, it followed the debt. Because the Nicholson note was indorsed in blank by American and
delivered into Lehman's constructive possession, Lehman became the holder of both the note and the deed of trust which
followed the note. Under these facts, we find that Lehman, as holder of the note and deed of trust, stood in the place of the
original lender. Under the terms of the deed of trust, Lehman, as lender, was the only party allowed to appoint a substitute
trustee and to foreclose on the Nicholson property. Any attempt by American to appoint a substitute trustee or foreclose on
the Nicholson property was ineffective. Slaughter, 162 S.W. 2d at 675.

Therefore, we find that the summary judgment evidence does not establish, as a matter of law, that American was
authorized to appoint a substitute trustee and foreclose on the Nicholson property. We, therefore, sustain this issue in
favor of the Nicholsons.

Because we have sustained the Nicholsons' first issue, we need not address the remaining issue. Tex. R. App. P. 47.1.

The judgment of the trial court is REVERSED and this cause is REMANDED for further proceedings.


 

ROGELIO VALDEZ

Chief Justice



Do not publish.

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 31st day of August, 2001.