

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00012-CV

_____

GREGG WILLIAMS, Appellant

V.

NATIONSTAR MORTGAGE, LLC, Appellee

On Appeal from the County Court at Law No. 2
Gregg County, Texas
Trial Court No. 2009-1576-CCL2

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

## I.     Facts and Procedural Background

Gregg Williams, bidding $9,000, was the high bidder at a trustee's foreclosure sale. Unknown to him, the property was encumbered by an alleged first lien of $148,800 also held by the same mortgagee, Nationstar Mortgage, LLC.   Litigation ensued.

This saga began when Russell Bird and his wife, Shay Bird, purchased a .547-acre tract of real property with a house in Gregg County through a warranty deed with vendor's lien dated March 14, 2007.   The deed retained a vendor's lien in favor of Nationstar Mortgage, LLC, securing the payment of two purchase money promissory notes—one for $148,800 and another for $37,200—both payable to Nationstar.   The Birds also executed two deeds of trust, both dated March 14, 2007, each securing one of the notes.   The warranty deed with vendor's lien and both deeds of trust were each recorded, apparently simultaneously, in the records of Gregg County, Texas, on March 22, 2007, at 4:36:37 p.m.

On March 11, 2008, a notice of trustee's sale was posted by a substitute trustee referencing the $37,200 lien.   The notice did not reference the $148,800 note or its deed of trust.   On April 1, 2008, the substitute trustee conducted a foreclosure sale, sold the property to Gregg Williams for $9,000, and conveyed the property without any reservation or mention of the other note or deed of trust.   Williams later discovered the existence of the $148,800 note and deed of trust on the property.   He demanded that Nationstar release the lien, but Nationstar refused and commenced

2

nonjudicial foreclosure under the $148,800 deed of trust. Williams filed suit to quiet title, arguing that he purchased the property free of all other liens, while Nationstar contended that the $148,800 deed of trust had priority over the foreclosed note. After a bench trial, the trial court agreed with Nationstar, and found that the $148,800 lien had priority and remained on the property. Accordingly, the trial court entered a take-nothing judgment in favor of Nationstar.

Williams argues that the trial court erred because: (1) the evidence supporting the trial court's finding of priority was legally and factually insufficient; (2) the trustee's deed to Williams conveyed all of Nationstar's rights to the property; and (3) Nationstar's nonjudicial foreclosure of one of the notes discharged the lien against the property on the second note.[1]

We affirm the trial court's judgment.

## II.     Legal and Factual Sufficiency of Lien Priority

The trial court found that the $148,800 deed of trust was superior to the $37,200 deed of trust. In support of that finding, the trial court noted that:

> the deed of trust recorded . . . at 200706505 securing a promissory note in the amount of $37,200.00 was a second lien and was inferior to the deed of trust recorded at 200706504 securing a promissory note in the amount of $148,000.00 [sic]. Though both deeds of trust were issued to secure the repayment of purchase money on the same subject real property, the deed of trust recorded at 200706505 was recorded second in time and was printed upon a Second Mortgage form.

---

[1]In his brief, Williams also argued that the trial court's prejudgment letter did not constitute findings of fact and conclusions of law. During oral argument, Williams explicitly abandoned that argument, and therefore, we do not address it.

3

The court also pointed out that the warranty deed conveying the property to the Birds specifically referenced the $148,800 promissory note as the "First Note" and the $37,200 promissory note as the "Second Note." In his first two points of error, Williams contends that the evidence supporting the trial court's finding of priority was legally and factually insufficient.

Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

In determining legal sufficiency, we analyze "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Walker & Assocs. Surveying, Inc. v. Austin*, 301 S.W.3d 909, 916 n.4 (Tex. App.—Texarkana 2009, no pet.). We credit favorable evidence if a reasonable jury could, and disregard contrary evidence unless a reasonable jury could not. *Wilson*, 168 S.W.3d at 827. As long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the jury. *Id*. at 822. In this case, the judge was the sole judge of witness credibility and the weight given to their testimony. *Id*. at 819. Although we consider the evidence in a light most favorable to the verdict, indulging every

4

reasonable inference that supports it, we may not disregard evidence that allows only one inference. *Id*. at 822.

In our factual sufficiency review, we consider and weigh all the evidence, and will set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Walker*, 301 S.W.3d at 916 n.4.

Generally, different liens upon the same property have priority according to the order in which they are created. *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App.—Fort Worth 1998, pet. denied). This rule is known as "first in time is first in right." *See AMC Mortgage Servs., Inc. v. Watts*, 260 S.W.3d 582, 585 (Tex. App.—Dallas 2008, no pet.); *Windham v. Citizens Nat'l Bank*, 105 S.W.2d 348, 351 (Tex. Civ. App.—Austin 1937, writ dism'd).

In this case, we are faced with the unique fact that the two competing deeds of trust securing the two purchase money promissory notes, as well as the warranty deed retaining a vendor's lien, were recorded in the Gregg County clerk's office on the same day at exactly the same hour, minute, and second.[2] However, the three documents were filed in specific order and received different recording page numbers. The warranty deed was recorded at page number 200706503, the $148,800 deed of trust was recorded at page number 200706504, and the $37,200 deed of trust was recorded at page number 200706505. The $37,200 deed of trust is printed on a

---

[2]Nothing in the record indicates exactly how this is possible. Similarly, there is nothing in the record indicating that the Gregg County clerk's office is equipped with a flux capacitor or other time-altering device.

"second mortgage" form, and the warranty deed specifically names the $148,800 promissory note the "First Note" and the $37,200 promissory note the "Second Note."

Though there is no guiding caselaw regarding these unusual factual circumstances, after considering all the evidence, we find that the evidence supporting the trial court's judgment is within the zone of reasonable disagreement and is not so weak as to be manifestly wrong. Accordingly, we overrule this point of error.

## II. Williams Takes Title Subject to the Prior Lien

In his second point of error, Williams contends that he owns the property free of any lien held by Nationstar because: (1) Nationstar's lien is invalid because the trustee's deed contains warranties of title, and therefore, the deed conveyed all of Nationstar's rights to the property, including its rights under the $148,800 lien; and (2) under *Puntney v. Moseley*,[3] foreclosing one deed of trust without reserving interest in the other divests Nationstar of all title and interest in the property and vests it in Williams.

The validity of a lien on real property is a question of law. *Florey v. Estate of McConnell*, 212 S.W.3d 439 (Tex. App.—Austin 2006, pet. denied). We review de novo questions of law. *In re Humphrey*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review.").

On March 11, 2008, a notice of trustee's sale was posted by the substitute trustee referencing the $37,200 lien. The notice did not reference any other note, lien, or deed of trust

---

[3]237 S.W. 1116 (Tex. Civ. App.—Amarillo 1922, writ dism'd).

related to the property. On April 1, 2008, the foreclosure sale was conducted, Williams was the winning bidder at $9,000, and the substitute trustee conveyed the property to Williams through a substitute trustee's deed. The deed states, in relevant part:

> hereby bargain, sell and convey unto the said Grantee the said hereinbefore described land and premises, together with all and singular the rights and appurtenances to the same in anywise belonging.
>
> TO HAVE AND TO HOLD the said property unto the said Grantee, its successors and assigns forever, in fee simple, and I, the said Substitute Trustee, acting in the capacity and manner aforesaid, by virtue of the power vested in me under the terms of said Deed of Trust, do hereby bind and obligate the said mortgagor, his/her heirs, assigns, executors and administrators to warrant and forever defend all and singular the right and title to said property unto the said Grantee . . . .

The deed failed to reference any other note, lien, or deed of trust related to the property, and also failed to reserve any interest on Nationstar's behalf.

### A.    The Warranty is From the Birds Rather than Nationstar

Williams contends that because the deed contained warranty language, it conveyed all of Nationstar's interests in the property to Williams. While the trustee's deed contains warranty language, both the trustee's deed and the deed of trust make clear that the warranties are made by the Birds rather than Nationstar. The trustee's deed states that it binds and obligates the "mortgagor . . . to warrant and forever defend . . . the right and title to said property unto [Williams] . . . ." The deed of trust states that in the event of foreclosure sale, the "[t]rustee shall deliver to the purchaser Trustee's deed . . . with convenants of general warranty from Borrower."

7

When a borrower executes a deed of trust, the legal and equitable estates in the property are severed. *Flag-Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987). As the borrower, the Birds retained the property's legal title, and the lender, Nationstar, held two equitable title interests in the property, one for each deed of trust. *Id*. Because the warranty is from the Birds, who hold only legal title, the warranty language has no bearing on Nationstar's equitable title interests in the property.

### B. *Puntney* Is Distinguishable From the Present Case

Williams also argues that because Nationstar held two deeds of trust on the property and only foreclosed one, without reserving interest in the other, the trustee's deed conveyed all of Nationstar's interest in the property to Williams, including its interest under the $148,800 deed of trust.

A purchaser at a foreclosure sale obtains that title and interest which the trustee has authority to convey. *First So. Props., Inc. v. Vallone*, 533 S.W.2d 339, 341 (Tex. 1976); *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ) (citing *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 17 (Tex. App.—Corpus Christi 1993, writ denied)). A trustee's authority to sell the debtor's property interests is strictly limited to the powers and means enumerated in the deed of trust and those conveyed and required by statute. *Winters v. Slover*, 251 S.W.2d 726 (Tex. 1952); *Olivares v. Nix Trust*, 126 S.W.3d 242 (Tex. App.—San Antonio 2003, pet. denied).

In support of his argument, Williams relies on *Puntney*, 237 S.W. 1116, for the proposition that "a trustee's deed has the effect of divesting the title of the mortgagor and vesting it in the purchaser."

In *Puntney*, when Bean failed to pay a lien against the property, Moseley, the holder of the note and deed of trust, foreclosed and sold the property through a trustee, Muse. *Id.* at 1117. The purchaser, Puntney, paid with a check, and received a trustee's deed. *Id.* However, the check was refused for insufficient funds, and the owner and trustee filed suit against Puntney, claiming that a vendor's lien arose at the time of sale and that they were entitled to foreclose on the original deed of trust lien as well as the amount of Puntney's check. *Id.* at 1118. In response to Puntney's claims on appeal that Bean was a "necessary party to a foreclosure of the lien to secure payment of the check," the trial court held that a vendor's lien arose at the foreclosure sale, that Moseley or Muse could foreclose on said vendor's lien, and that Bean was not a necessary party because the trustee's sale had the effect to "divest the title to the land out of Bean and vest it in Puntney, and to pay Bean's obligation" on the original debt because the trustee's sale was, in effect, a sale by Bean's agent. *Id.*

*Puntney* does not support Williams' argument because the *Puntney* creditor only held one deed of trust securing one debt and another lien arose at the time of the foreclosure sale. Here, the mortgagee holds two separate notes and two deeds of trust and it foreclosed on only one of them. In *Puntney*, the remedies through the vendor's lien extinguished Bean's obligations under the

9

original deed of trust because the vendor's lien arose from the foreclosure sale of the original deed of trust. *See id.*

Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed. *Conversion Props. v. Kessler*, 994 S.W.2d 810, 813 (Tex. App.—Dallas 1999, pet. denied) (citing RESTATEMENT (THIRD) OF PROPERTY: *Mortgages* § 7.1 (1997)). In fact, the general rule is that the successful bidder at a junior lien foreclosure takes title subject to the prior liens. *Id.* (citing W. MIKE BAGGETT, TEXAS FORECLOSURE LAW & PRACTICE § 2.69 (1984); 59 C.J.S. *Mortgages* § 549 (1998); 59A C.J.S. *Mortgages* § 601 (1998)). The purchaser takes the property charged with the primary liability for the payment of the prior mortgage and must therefore service the prior liens to prevent loss of the property by foreclosure of the prior liens. *Id.* at 813.

As per our rulings above, the $148,800 deed of trust is a superior lien. It is undisputed that the deed to the Birds, mentioning two liens, and the $148,800 deed of trust were both of record at the time of the foreclosure sale and that Williams failed to perform any title search whatsoever. Therefore, Williams placed his bid at the foreclosure sale with constructive notice of a superior lien. We overrule this point of error.

## III. Foreclosure of Second Lien Did Not Extinguish the First Lien

In his final point of error, Williams argues that the trial court erred by failing to find that the nonjudicial foreclosure sale of one note discharged the second note's lien against the property. In

support of this argument, Williams relies upon *Vieno v. Gibson*, and its progeny. That line of cases is distinguishable.

In *Vieno v. Gibson*, Yoakam sold a tract of land to Gibson and Rose, who executed two promissory notes payable to Yoakam or the bearer, secured by a single vendor's lien retained in the deed. *Vieno v. Gibson*, 20 S.W. 717, 718 (Tex. Civ. App. 1892). Yoakam transferred the notes to Vieno. *Id.* When the debtors failed to pay the first note, Vieno filed for, and received, a judgment, and he foreclosed his vendor's lien on the real property. By court order, the property was sold at a judicial foreclosure sale. Later, Vieno attempted to foreclose his vendor's lien on the second note. *Id.* The Texas Court of Civil Appeals held that where two notes are of "equal dignity" and held by the same party, there could be only one foreclosure sale because the creditor abandoned the lien on the second note by failing to take measures to reserve it. *Id.*

In *Brown v. Canterbury*, the Texas Supreme Court cited and applied *Vieno*. *Brown v. Canterbury*, 104 S.W. 1055 (Tex. 1907). A vendor's lien was foreclosed on and the property sold through a judicial sale, and the court held that the purchaser took the title of the original debtors as well as the legal title held by the creditor even though the original debtors had conveyed and encumbered part of the land prior thereto.

In *Alston v. Piper*, 79 S.W. 357 (Tex. Civ. App. 1904), the court cited *Vieno*, and expanded the ruling somewhat. Alston was the owner and holder of two notes, one note was secured by a deed of trust, and the other note was secured by a vendor's lien. *Id.* at 359. Alston brought

11

separate suits on these notes in the district court, and prosecuted both to final judgment, together with a foreclosure of the respective liens given to secure the notes.   A foreclosure sale was held "under the first or prior lien."   *Id.* at 360.   When Alston attempted to later foreclose on another lien he held on the same property, the court noted that "[i]n ascertaining the character of property and the interest therein to be sold, [the purchaser at the foreclosure sale] was not required to look beyond the judgment and order of sale under which he bought," and held that:

> when a person holds two claims secured by liens on the same land, and a foreclosure of one of said liens is obtained by him, and the property sold thereunder, the purchaser takes the land discharged of the other lien, and acquires the title of both plaintiff and defendant in the judgment.   This is true, although the purchaser pays less than the actual value of the land, and has notice at the time of his purchase of the existence of such other outstanding lien in favor of the judgment creditor, at whose instance the sale is made.

*Id.* at 358 (citations omitted).

In *Vieno* and *Brown*, the debt or debts were secured by a single vendor's lien, and absent any reservation of other debt interests, foreclosure of the lien extinguished, or rendered unsecured, any remaining obligations.   Here, each promissory note is secured by a separate, recorded deed of trust, and only one of them was foreclosed, leaving the $148,800 lien still secured by the remaining deed of trust.   The creditor in *Alston* foreclosed on a prior, superior lien, thereby abandoning or extinguishing the secondary liens.   This case is distinguishable from *Alston* because, as per our ruling in this case, Nationstar foreclosed on the inferior lien, leaving the superior lien intact. Further, the *Vieno* cases are all foreclosures through judicial sale, where an election of remedies

12

must occur, while in this case, the sale was via nonjudicial sale.   Therefore, we overrule this point of error.

We affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     July 27, 2011
Date Decided:     September 1, 2011